961 P.2d 1059

**Patricia R. HALE, Plaintiff/Appellant,**

v.

**AMPHITHEATER SCHOOL DISTRICT NO. 10 OF PIMA COUNTY, Arizona, a political subdivision, Defendant/Appellee.**

**No. 2 CA–CV 97–0147.**

Court of Appeals of Arizona, Division 2, Department B.

Jan. 22, 1998.

Review Denied Sept. 10, 1998.

---

one or more offenses charged in an indictment"

as provided for in the rule.

Lieberman, Dodge, Sendrow & Gerding, Ltd. by Susan G. Sendrow, Phoenix, for Plaintiff/Appellant.

Corey, Farrell, Kime & Bromiel, P.C. by Barry M. Corey and Barrett L. Kime, Tucson, for Defendant/Appellee.

1. The first two contracts were entitled "Short-Time Teacher's Contract," and the final contract

## OPINION

PELANDER, Presiding Judge.

¶ 1 Plaintiff/appellant Patricia R. Hale appeals from the trial court's judgment, entered after an evidentiary order to show cause hearing, dismissing her complaint for special action relief against defendant/appellee Amphitheater School District No. 10. Hale, whose probationary teacher's contract was not renewed after her third year of employment with the District, contends the trial court erred in concluding the District complied with the notice of nonrenewal requirements in A.R.S. § 15–536, rejecting her claim for preferential reappointment under A.R.S. § 15–544(C), and assessing attorney's fees against her under A.R.S. § 12–341.01. Finding no error, we affirm.

## FACTUAL BACKGROUND

¶ 2 The trial court entered formal findings of fact and conclusions of law, which were incorporated by reference in its judgment. We view the facts, which are essentially undisputed and not clearly erroneous, in the light most favorable to sustaining the judgment. *Federoff v. Pioneer Title & Trust Co.*, 166 Ariz. 383, 803 P.2d 104 (1990).

¶ 3 The District employed Hale under three successive one-year teaching contracts, beginning in September 1993.[1] Each contract contained language that " '[a] short-term teacher shall not have an automatic right to contract for the following year,' and the parties hereby agree that TEACHER is not entitled to have his/her contract renewed." Hale was first hired to fill a vacancy created by a teacher who had resigned after the 1993–94 school year had begun and was rehired for the next two school years to fill a temporary vacancy created when another teacher took a leave of absence. Because that teacher was returning to her regular teaching duties for the 1996–97 school year, the District no longer required Hale's services.

¶ 4 In the spring of 1994, 1995, and 1996, the District's Director of Human Resources, James Fogltance, notified Hale by letter that

for the 1995–96 school year was entitled "Short-Term Teacher's Contract."

her short-term position would terminate at the end of the respective school year. In 1994 and 1995, the District rehired Hale for the next school year. In 1996, however, it did not offer Hale a contract for the 1996–97 school year, and this suit followed.

## STANDARD OF REVIEW

¶ 5 Although "[t]he trial court's findings of fact are binding on this court unless they are clearly erroneous or unsupported by any credible evidence," *Imperial Litho/Graphics v. M.J. Enterprises,* 152 Ariz. 68, 72, 730 P.2d 245, 249 (App.1986), this court is not bound by the trial court's conclusions of law, and we may draw our own legal conclusions from the facts the trial court found. *Ponderosa Plaza v. Siplast,* 181 Ariz. 128, 888 P.2d 1315 (App.1993). "We review de novo issues of statutory interpretation because they are issues of law." *Wallace v. Casa Grande Union High Sch. Dist.,* 184 Ariz. 419, 424, 909 P.2d 486, 491 (App.1995). We will affirm the trial court's judgment "if the result was legally correct for any reason." *General Elec. Capital Corp. v. Osterkamp,* 172 Ariz. 191, 193, 836 P.2d 404, 406 (App.1992).

## DISCUSSION

I. Notice Requirements

¶ 6 Section 15–536 of the Teachers' Tenure Act (the Act), A.R.S. §§ 15–501 through 15–551, provides in pertinent part:

A. Subject to the provisions of §§ 15–539, 15–540, 15–541, 15–544 and 15–549, the governing board shall, between March 15 and May 15, offer a teaching contract for the next ensuing school year to each certificated teacher who has not been employed by the school district for more than the major portion of three consecutive school years and who is under a contract of employment with the school district for the current school year, unless, on or before April 15, the governing board, a member of the board acting on behalf of the board or the superintendent of the school district gives notice to the teacher of the board's intention not to offer a teaching contract, unless such teacher has been dismissed

pursuant to §§ 15–538, 15–539, 15–541 or 15–544. . . .

B. Notice of the board's intention not to reemploy the teacher shall be by delivering it personally to the teacher or by sending it by registered or certified mail bearing a postmark of on or before April 15, directed to the teacher at his place of residence as recorded in the school district records. The notice shall incorporate a statement of reasons for not reemploying the teacher. . . .

¶ 7 Our supreme court has recognized that the Act's purpose is " 'to give protection to the teaching profession from arbitrary dismissals,' and to this end it 'should be given a liberal interpretation.' " *Wheeler v. Yuma Sch. Dist. No. One,* 156 Ariz. 102, 109, 750 P.2d 860, 867 (1988), *quoting Board of Education v. Williams,* 1 Ariz. App. 389, 393, 403 P.2d 324, 328 (1965). In addition, the Act's notice provisions " 'create a personal right which must be strictly followed.' " *Wheeler,* 156 Ariz. at 110, 750 P.2d at 868, *quoting School Dist. No. 6 v. Barber,* 85 Ariz. 95, 96, 332 P.2d 496, 497 (1958).

¶ 8 The trial court concluded, and the parties do not dispute, that Hale was a probationary teacher whose rights to a contract for the 1996–97 school year are governed by § 15–536. Hale concedes the District was entitled to not renew her contract for that school year. She contends, however, that the District failed to "strictly follow" § 15–536 because "[n]either the person sending the nonrenewal notice (Fogltance as the Director of Human Resources and not a governing board member or the Superintendent) nor the manner of delivery (placing in school mailbox and not delivering personally or by registered or certified mail) complie[d] with the notice provisions" of the statute.

¶ 9 We reject Hale's contentions for several reasons. First, at a public meeting in June 1995, the District's governing board approved Hale's short-term contract for only the 1995–96 school year, differentiating it from a career teacher's contract. As the trial court specifically found, the governing board intended at that time that Hale's contract would not be renewed and that she

would not be offered a teaching contract for the following year. Those determinations by the board manifested its "intention not to offer a teaching contract" to Hale for the 1996–97 school year, § 15–536(A), and constituted a "collective decision of a majority of the board." *Peck v. Board of Ed.*, 126 Ariz. 113, 115, 612 P.2d 1076, 1078 (App.1980).

¶ 10 Second, the board's intent is consistent with Hale's understanding. Hale testified, and the trial court found, that when she signed the 1995–96 contract, she specifically understood she was not entitled to have the contract renewed, was employed during that year for the specific purpose of temporarily replacing a tenured teacher during her leave of absence, and was serving a limited function for a set period of time.

¶ 11 Third, Fogltance's letter of March 8, 1996, to Hale was merely a confirmatory reminder, stating that "the short-term position that [she] held with the district during the 1995–96 school year will end on May 17, 1996," in accordance with her contract and District regulations. Moreover, the record indicates, and the trial court found, that the District superintendent had specifically delegated to Fogltance the responsibility of notifying probationary teachers like Hale that their short-term contracts would not be renewed, when that decision had been made by the governing board. In our view, neither the law nor common sense precluded the superintendent from delegating to Fogltance the ministerial task of providing nonrenewal reminder notices to short-term teachers like Hale. *Cf. Peck.* Under the circumstances, the District's notice of nonrenewal did not violate § 15–536(A).

¶ 12 Fourth, the method of delivery of the notice of nonrenewal complied with § 15–536(B). As noted above, the 1995–96 contract that Hale signed specified a one-year term and manifested the board's intention not to reemploy her after that school year ended. It is undisputed that the District personally delivered that contract to Hale. It also is uncontroverted that Hale personally received Fogltance's March 8, 1996 reminder notice the following day, well before the April 15 statutory deadline under § 15–536. The trial court found, and the record establishes, that either the principal of the school where Hale taught or the principal's secretary personally delivered the notice to Hale or personally discussed it with her immediately after she received the notice in her personal mailbox at the school. We find no violation of § 15–536(B).

¶ 13 Hale contends her 1995–96 contract itself cannot constitute notice of nonrenewal for purposes of § 15–536, because the statute "contemplates a notice distinct from the teaching contract" and requires "the decision to nonrenew and the notice of that decision" to occur during the current school year for the next ensuing year. She apparently argues that § 15–536 requires any notice of nonrenewal to be given between March 15 and April 15 of the same year in which the next school year will start. The statutory language, however, does not support that argument. Section 15–536(A) and (B) require notice of nonrenewal to be given "on or before April 15" and do not preclude it from being given in a teaching contract itself executed before the school year begins.

¶ 14 Nor does any clear policy prohibit such timing or mechanism of notice of nonrenewal. Contrary to Hale's arguments, allowing school districts to decide and manifest their intent, at the "front end," not to renew a probationary teacher's short-term contract after it has expired does not undermine or circumvent the Act's purposes. Rather, advising probationary teachers in the contract itself, at or before the beginning of the school year, that the contractual relationship is short-term, for a specific purpose and duration, and not automatically renewable arguably furthers the Act's objectives by giving such teachers advance notice of their status so they can explore future teaching options or make other employment plans. We hold that the method and substance of notice of nonrenewal in this case did not violate the letter or spirit of § 15–536.[2]

2. We find no merit in Hale's argument that "use of 'short-term' contracts absolutely undermines [the Act's] purpose by allowing the District to hire a teacher under three separate, consecutive 'short-term' contracts, to issue that teacher a fourth 'short-term' contract, and then to deny

## II. Reappointment Rights

¶ 15 Hale next contends she is entitled to preferential reappointment under § 15–544(C), which states:

A certificated teacher dismissed for reasons of economy or to improve the efficient conduct and administration of the schools of the school district shall have a preferred right of reappointment in the order of original employment by the governing board in the event of an increase in the number of certificated teachers or the reestablishment of services within a period of three years.

We review the trial court's contrary conclusion *de novo* because it involves statutory interpretation issues and mixed questions of fact and law. *Wallace.*

¶ 16 Relying on *Hampton v. Glendale Union High School District,* 172 Ariz. 431, 837 P.2d 1166 (App.1992), and citing the District's notations on her employment record of "RIF" and "Lay-Off" as reasons for her termination, Hale claims a preferred right of reappointment under § 15–544(C). *Hampton* is inapposite, however, because the school district's nonrenewal of the probationary teacher's contract in that case specifically was "due to a reduction of certificated staff necessitated by a reduction of enrollment and/or elimination of course offerings," and the district's notice had acknowledged the teacher's preferential reappointment rights under § 15–544. *Id.* at 432, 837 P.2d at 1167. Under those distinguishable facts, the court in *Hampton* held that "the school district must comply with the statute by notifying the dismissed teacher of an open position, even if the teacher has obtained a teaching position in another district." *Id.* That holding has no bearing on this case.

¶ 17 In addition, the coded designations on Hale's employment record do not conclusively establish that she was "dismissed for reasons of economy or to improve the efficient conduct and administration of the schools." § 15–544(C). On the contrary, the trial court specifically found that the

District did not dismiss Hale and that its nonrenewal of her contract was not for reasons specified in that statute. Rather, the court found, and the record establishes, that the District did not offer Hale a teaching contract for the 1996–97 school year because the purpose for which she had been hired had been fulfilled when the teacher whom Hale had temporarily replaced returned to her regular teaching position with the District.

¶ 18 Our primary goal in interpreting statutes is "to ascertain and give effect to the intent of the legislature," focusing first on the statutory language and, if necessary, considering "the context of the statute and its historical background, subject matter, effects, consequences, and purpose." *Hampton,* 172 Ariz. at 434, 837 P.2d at 1169. "Statutory provisions are to be read in the context of related provisions and of the overall statutory scheme. The goal is to achieve consistency among the related statutes." *Goulder v. Arizona Dep't of Transp.,* 177 Ariz. 414, 416, 868 P.2d 997, 999 (App.1993), *aff'd,* 179 Ariz. 181, 877 P.2d 280 (1994).

¶ 19 Reading §§ 15–536 and 15–544 together, it is clear that not all nonrenewals under § 15–536 constitute dismissals for purposes of § 15–544(C). *Cf. Board of Trustees v. Superior Court,* 25 Ariz.App. 47, 49, 540 P.2d 1266, 1268 (1975) ("Failure to re-employ a probationary teacher is not a 'dismissal.' "). Moreover, dismissals under § 15–544 are expressly excepted from the notice requirements of § 15–536. § 15–536(A). The District's compliance with § 15–536, as discussed above, indicates it did not intend Hale's termination to be a dismissal within the meaning of § 15–544(C). The governing board decided in June 1995 to authorize and extend a short-term contract to Hale only for the 1995–96 school year. Its decision not to offer her a contract for the next year, under the circumstances of this case, does not constitute a dismissal for economic or efficiency

---

that teacher tenure." If a teacher has been employed by a school district for more than the major portion of three consecutive school years and is under a contract of employment with the

District for the current school year, he or she becomes a "continuing" or tenured teacher with different rights and remedies. *See, e.g.,* A.R.S. §§ 15–538.01, 15–539, 15–542(C), 15–544(A).

reasons, and the trial court did not err in reaching that conclusion.[3]

### III. Attorney's Fees

¶ 20 Hale challenges the trial court's award of $4,500 in attorney's fees to the District (less than half the amount it sought), contending the court failed to properly consider the factors outlined in *Associated Indemnity Corp. v. Warner*, 143 Ariz. 567, 694 P.2d 1181 (1985). "An award of attorneys' fees and costs under § 12–341.01 is left to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *Rogus v. Lords*, 166 Ariz. 600, 603, 804 P.2d 133, 136 (App.1991). We will not disturb the trial court's discretionary award of fees if there is any reasonable basis for it. *Warner*. We find no abuse of discretion here. In our discretion, however, we deny the District's request for attorney's fees on appeal.

### DISPOSITION

¶ 21 The trial court's judgment is affirmed.

DRUKE, C.J., and HOWARD, J., concur.

---

**3.** In view of our holding, we do not address the District's cross-issue on appeal as to whether estoppel bars Hale's claims in this case.